**Henry BENSON**

v.

**Harry A. HERBST et al.**

Court of Appeals of Tennessee,
at Nashville.

Oct. 12, 2006 Session.

May 18, 2007.

This appeal illustrates the fate that awaits plaintiffs who file suit in general sessions court when their damages exceed the court's jurisdictional limits. After the plaintiff was seriously injured in an automobile accident, he filed suit in the Davidson County General Sessions Court against the driver of the other vehicle and the other driver's employer. On the date of the hearing, the defendants confessed judgment and agreed to pay the damages sought in the general sessions warrant. Over the plaintiff's objection, the general sessions court entered a $14,999 judgment against the defendants. The plaintiff thereafter perfected a de novo appeal to the Circuit Court for Davidson County. The defendants moved to dismiss the appeal for lack of subject matter jurisdiction on the ground that the general sessions court judgment was not "adverse" to the plaintiff. The trial court dismissed the case for lack of subject matter jurisdiction, and the plaintiff appealed. Like the trial court, we have determined that the general sessions judgment was not adverse to the plaintiff because he had received all the relief he requested from the general sessions court. Accordingly, the trial court did not err by dismissing the de novo appeal for lack of subject matter jurisdiction.

Luvell L. Glanton and Tusca R.S. Alexis, Nashville, Tennessee, for the appellant, Henry Benson.

A. Scott Ross and Cynthia S. Parson, Nashville, Tennessee, for the appellees, Harry Herbst and Bridgestone Americas Holding, Inc.

**OPINION**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

**I.**

On April 1, 2003, Henry Benson was severely injured in an automobile accident caused by Harry A. Herbst, an employee of Bridgestone Americas Holding, Inc. (Bridgestone). Mr. Benson incurred over $100,000 in medical expenses and was rendered twenty percent permanently disabled. He retained the law firm of Fisher & Raney to assist him in filing a lawsuit, and on March 31, 2004, he swore out warrants against Mr. Herbst and Bridgestone in the Davidson County General Sessions Court. In both warrants, he requested

damages of "under $ *statutory limit* Dollars." The warrant was served on Bridgestone on April 20, 2004, but the process server was unable to locate Mr. Herbst in the county.

On August 12, 2005, Mr. Benson retained Luvell L. Glanton to represent him in the litigation. At the time, the jurisdiction of the general sessions court was capped at $15,000 exclusive of any amounts awarded for attorney's fees and any court costs or discretionary costs assessed by the court.[1] Despite the severity of Mr. Benson's injuries and the fact that his medical bills alone far exceeded the monetary limits of the court's jurisdiction, Mr. Glanton decided to proceed with the case in general sessions court. On September 21, 2005, six weeks after he was retained by Mr. Benson, Mr. Glanton swore out a third civil warrant against Bridgestone and Mr. Herbst on Mr. Benson's behalf. The warrant sought damages against the defendants of "under $ *15,000.00* Dollars." Mr. Glanton never requested that the case be transferred to the Circuit Court for Davidson County, which has no monetary cap on its jurisdiction.[2]

The general sessions court heard the case on January 11, 2006. Bridgestone and Mr. Herbst appeared and confessed judgment in the amount sought by Mr. Benson.[3] The court rebuffed Mr. Glanton's subsequent attempt to put on evidence regarding the extent of Mr. Benson's injuries, ruling that it was unnecessary in light of the defendants' confession of judgment in Mr. Benson's favor. The general sessions court entered the judgment in the space provided on the last warrant sworn out by Mr. Benson against Bridgestone and Mr. Herbst. The court's judgment read exactly as follows:

> Judgment for *Henry Benson* against *Harry Herbst & Bridgestone Americas Holding, Inc.* for $ *14,999* Dollars and cost of suit, for which Execution may issue. Entered: *1–11,* 20 *06*

Mr. Glanton did not object to the amount of the damages, although he did continue to protest the general sessions court's refusal to let him put on evidence regarding the extent of Mr. Benson's injuries.

Less than an hour after the hearing, Mr. Glanton filed an appeal to the Circuit Court for Davidson County for a trial de novo. He later amended the complaint to seek $1,500,000 in compensatory damages for Mr. Benson's injuries. Bridgestone and Mr. Herbst moved to dismiss the appeal for lack of jurisdiction on the ground that the judgment of the General Sessions Court was not "adverse" to Mr. Benson because he received an award of damages equal to the court's jurisdictional limit. Tenn.Code Ann. § 27–5–108(a)(1) (Supp. 2006). Bridgestone and Mr. Herbst later moved to dismiss the complaint on the same ground.

Mr. Glanton raised three arguments on Mr. Benson's behalf in response to the motions to dismiss. First, he argued that the appeal was governed by Tenn.Code Ann. § 27–5–101 (2000) rather than Tenn. Code Ann. § 27–5–108(a)(1), which meant

---

**1.** Tenn.Code Ann. § 16–15–501(d) (Supp. 2005) (repealed). The General Assembly has since increased the jurisdictional limit of the General Sessions Courts to $25,000. Act of May 19, 2006, ch. 722, § 1, 2006 Tenn. Pub. Acts 1876 (codified at Tenn.Code Ann. § 16–15–501(d)(1) (Supp.2006)).

**2.** *Ware v. Meharry Med. Coll.,* 898 S.W.2d 181, 185 (Tenn.1995).

**3.** Tenn.Code Ann. § 16–15–401(a)(2) (1994) authorizes General Sessions Courts to "[e]nter up judgment by confession of a defendant to any amount within the judge's jurisdiction in the particular case."

that Mr. Benson had a right to a trial de novo in the circuit court as long as he was "dissatisfied" with the judgment of the General Sessions Court, regardless of whether or not it was "adverse" to him. Second, Mr. Glanton claimed the judgment was "adverse" to Mr. Benson, because his medical bills alone dwarfed the $14,999 he was awarded by the general sessions court. Third, Mr. Glanton argued the judgment was adverse to Mr. Benson because the general sessions court awarded him one dollar less than it could have while still complying with the monetary cap on its jurisdiction.

Mr. Glanton did not attend the February 17, 2006 hearing on the motion to dismiss the appeal. His colleague, Tusca Alexis, appeared on Mr. Benson's behalf. When the trial court asked why Mr. Glanton allowed the case to remain in the general sessions court, Ms. Alexis offered no explanation other than to say that Mr. Glanton took over the case from another attorney, and that when he did so, it had already been filed in the general sessions court. On the merits, Ms. Alexis reiterated Mr. Glanton's argument that the amount awarded to Mr. Benson by the general sessions court fell one dollar short of the court's jurisdictional limit. The trial court subsequently entered a March 6, 2006 order dismissing the appeal for lack of subject matter jurisdiction.

Even before the trial court had a chance to issue its written order, Mr. Glanton filed a motion to alter or amend the order dismissing the appeal. The trial court conducted a hearing on the motion on March 10, 2006. Mr. Glanton appeared personally at this hearing. Again the trial court inquired why Mr. Glanton had not simply moved to transfer the case to the circuit court from the general sessions court,[4] requested a continuance at the hearing before the general sessions court, or taken a voluntary nonsuit and then re-filed the case in circuit court. The court also questioned Mr. Glanton's decision not to file a motion to alter or amend the judgment in the general sessions court.[5]

Mr. Glanton conceded that these options were available to him but explained his position that it was equally viable under the rules for him to put evidence into the record in the general sessions court regarding Mr. Benson's extensive injuries, wait for the general sessions court to dismiss the case, and then re-file it in circuit court where there would be no jurisdictional limit on the amount of damages available to Mr. Benson. The trial court entered a March 17, 2006 order denying the motion to alter or amend the order of dismissal. Mr. Glanton appealed the trial court's decision to this court on Mr. Benson's behalf.

## II.

### THE STANDARDS OF REVIEW

 The concept of subject matter jurisdiction implicates a court's power to

---

4. Mr. Glanton did not have the option to ask that the case be transferred to circuit court. Tenn.Code Ann. § 16–1–116 (Supp.2006) permits transferring "original civil actions" filed in a general sessions court to circuit court only when the general sessions court "determines that it lacks jurisdiction." The civil warrants filed in this case requested damages "under $ *15,000.00* Dollars" and "under $ *statutory limit* Dollars." The general sessions court clearly had jurisdiction to award the damages requested. The transfer provi-

sions in Tenn.Code Ann. § 16–15–732 (1994) were equally unavailable to Mr. Benson because they are available to defendants, not plaintiffs.

5. Tenn.Code Ann. § 16–15–727 (Supp.2006) provides that "[t]he provisions of Tennessee Rules of Civil Procedure, Rule 60, relative to correction of judgments shall apply to all courts of general sessions."

adjudicate a particular type of case or controversy. *Osborn v. Marr,* 127 S.W.3d 737, 739 (Tenn.2004); *Toms v. Toms,* 98 S.W.3d 140, 143 (Tenn.2003); *First Am. Trust Co. v. Franklin–Murray Dev. Co.,* 59 S.W.3d 135, 140 (Tenn.Ct.App.2001). A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts. *Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *Dishmon v. Shelby State Cmty. Coll.,* 15 S.W.3d 477, 480 (Tenn.Ct. App.1999). The parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *State ex rel. Dep't of Soc. Servs. v. Wright,* 736 S.W.2d 84, 85 n. 2 (Tenn.1987); *Team Design v. Gottlieb,* 104 S.W.3d 512, 527 (Tenn.Ct.App.2002).

█ The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn.1994). Thus, when a court's subject matter jurisdiction is challenged, the first order of business is to ascertain the nature or gravamen of the case. *Staats v. McKinnon,* 206 S.W.3d 532, 542 (Tenn.Ct. App.2006); *Midwestern Gas Transmission Co. v. Baker,* No. M2005–00802–COA–R3–CV, 2006 WL 461042, at *11 (Tenn.Ct.App. Feb.24, 2006) (No Tenn. R.App. P. 11 application filed). Then, the court must determine whether the Tennessee Constitution or the General Assembly has conferred on it the power to adjudicate cases of that sort. *In re S.L.M.,* 207 S.W.3d 288, 295 (Tenn.Ct.App.2006); *Staats v. McKinnon,* 206 S.W.3d at 542. Both determinations involve questions of law which this court reviews de novo without a presumption of correctness. *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn.2000); *Southwest Williamson County Cmty. Ass'n v. Saltsman,* 66 S.W.3d 872, 876 (Tenn.Ct.App.2001).

### III.

█ Mr. Benson takes issue with the trial court's determination that the relevant jurisdictional statute is Tenn.Code Ann. § 27–5–108 rather than Tenn.Code Ann. § 27–5–101. The jurisdictional statute relied on by the circuit court provides that "[a]ny party may appeal from an adverse decision of the general sessions court to the circuit court of the county." Tenn. Code Ann. § 27–5–108(a)(1). The jurisdictional statute favored by Mr. Benson provides that "[a]ny person dissatisfied with the judgment of a recorder or other officer of a municipality charged with the conduct of trials, in a civil action, may ... appeal to the next term of circuit court." Tenn. Code Ann. § 27–5–101.

We fail to see the significance of the distinction Mr. Benson is attempting to draw. The issue under both statutes is whether the party seeking to appeal secured a result in the general sessions court that was less favorable than what he or she requested. The more favorable result desired must, of course, be something that was within the power of the general sessions court to grant. The question is not whether the judgment was "adverse" or the party was "dissatisfied" in some abstract, metaphysical sense, but rather whether the judgment was "adverse" or the party "dissatisfied" within the context of a general sessions court proceeding. If, as the defendants claim, Mr. Benson received all the relief the general sessions court could give him, or all the relief he requested from the general sessions court, then regardless of the controlling statute, the trial court had no jurisdiction to entertain the appeal.

Mr. Benson argues that the judgment was adverse to him for two reasons: (1)

because his medical bills alone dwarfed the $14,999 awarded by the general sessions court; and (2) because the general sessions court awarded him one dollar less than the $15,000 monetary limit of its jurisdiction. The first point strongly suggests that the case should never have been filed in general sessions court in the first place. It is, however, completely irrelevant to the jurisdictional issue. Mr. Benson does not claim that the general sessions court had the power to award him the $1,500,000 in compensatory damages. As noted above, a judgment is not "adverse" within the meaning of Tenn.Code Ann. § 27–5–108(a)(1) where the more favorable result desired by the party seeking to appeal is something that was patently beyond the power of the general sessions court to grant.

Mr. Benson's second point, while seemingly picayune, also happens to be correct. At the time the original judgment was entered, the statute governing the jurisdiction of the general sessions court provided: "[T]he jurisdiction of courts of general sessions ... shall extend to the sum of fifteen thousand dollars ($15,000) in all civil cases...." Tenn.Code Ann. § 16–15–501(d)(1). Under the plain language of the statute, the general sessions court was authorized to enter a judgment in favor of Mr. Benson for $15,000. *Ware v. Meharry Med. Coll.,* No. 01A01–9304–CV–00149, 1994 WL 108905, at *4 (Tenn.Ct.App. Mar.30, 1994), *overruled on other grounds,* 898 S.W.2d 181 (Tenn.1995).

Moreover, in many cases, a page of history is worth a volume of logic. In Tennessee, the general sessions courts took the place of justices of the peace. Tenn. Code Ann. § 16–15–501(a). The formula "jurisdiction shall extend to" a particular sum appears to have originated in statutes governing the monetary limits on the jurisdiction of justices of the peace. Courts in

Tennessee and elsewhere interpreted this statutory formula to mean that a justice of the peace could award a party damages equal to the figure listed in the jurisdictional statute but no more. *See, e.g., Harris v. David Hadden & Co.,* 75 Tenn. 214, 216–18 (1881); *Barrett & Williford v. Black, Cobb & Co.,* 25 Ga. 151, 153–54 (1858); *Forsha v. Watkins,* 4 Blackf. 520, 520 (Ind.1838). Thus, the general sessions court could have awarded Mr. Benson $15,000, a result one dollar more favorable to Mr. Benson than the one he actually achieved.

However, the fact that the general sessions court could have awarded Mr. Benson one dollar more in damages than it did does not necessarily mean that the judgment was "adverse" to Mr. Benson within the meaning of Tenn.Code Ann. § 27–5–108(a)(1). As explained above, in order for the judgment to be "adverse" to a party, it must be less favorable than both what the court could have awarded and what the party requested. If a court has the power to award a litigant one hundred thousand dollars, but the litigant requests only ten thousand dollars, he or she cannot later claim that the court's judgment was an "adverse" one.

Something quite similar happened in this case. The general sessions court had the power to award Mr. Benson $15,000 in damages. Mr. Benson, however, did not request that amount. Instead, the civil warrant Mr. Glanton swore out on Mr. Benson's behalf requested an award of damages "under $ *15,000.00* Dollars." Before the circuit court, Mr. Glanton argued that the judgment was "adverse" to Mr. Benson because the general sessions court could have awarded Mr. Benson $14,999.99 instead of $14,999 even. This argument proves too much. Mr. Glanton never asked the general sessions court to award his client the additional 99¢, and the gener-

al sessions court can hardly be expected to read Mr. Benson's mind. Thus, the judgment of the general sessions court was not "adverse" to Mr. Benson within the meaning of Tenn.Code Ann. § 27–5–108(a)(1) because the court awarded him everything he requested. Therefore, the trial court correctly concluded that it lacked jurisdiction to entertain the de novo appeal.

## IV.

We affirm the trial court's decision dismissing the de novo appeal and reinstating the judgment of the general sessions court. We tax the costs of this appeal to Henry Benson and his surety for which execution, if necessary, may issue.